AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Jose Rodrigo GALLARDO<br>US Citizen<br>YOB:1968<br><br>*Defendant(s)* | Case No. M-21-1221-M<br><br>**SEALED** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 18 - July 19, 2019__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to possess with Intent to Distribute over 50 grams of methamphetamine |

This criminal complaint is based on these facts:

See Attachment "A"

United States District Court
Southern District of Texas
FILED
JUN 02 2021
Nathan Ochsner, Clerk

☑ Continued on the attached sheet.

Approved:
Robert Wells Jr AUSA
6/2/2021

_____
Complainant's signature

Ryan J. Hammer, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/2/21 - 4:14 p.m.

City and state: McAllen, Texas

_____
Judge's signature

Juan F. Alanis, United States Magistrate Judge
*Printed name and title*

# Attachment "A"

## Affidavit in Support of Complaint

I, Ryan J. Hammer, being first duly sworn, state as follows:

### Introduction

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since June of 2016. I am currently assigned to the San Antonio Division, McAllen office where I conduct a variety of investigations pertaining to gangs and violent crime. I attended the FBI Academy in Quantico, Virginia, which entailed 21 weeks of training in law enforcement and investigative activities. In the performance of my duties, I have investigated and assisted in the investigation of violent criminal organizations to include home invasion crews, gangs, kidnappings, and assaults on federal officers. I have received training from the FBI pertaining to the investigation of such matters to include extensive training on cellphone analysis and call detail records, as well as social media accounts and their analysis. In addition, I have conferred with FBI colleagues with extensive training and experience in the investigation of violent criminal organizations.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Your affiant knows that it is a violation of Title 21 United States Code Sections 846, 841(a)(1) conspiracy to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of the offenses listed above have been committed by Jose Rodrigo **GALLARDO** (hereinafter "GALLARDO").

## Facts Supporting Probable Cause

4. Beginning on or about June 28, 2019 and continuing through July 19, 2019 an FBI confidential human source (CI#1) recorded several phone calls with a male subject identified as Arturo ILLESCAS. In these calls, ILLESCAS offered to sell CI#1 several handguns, a rifle, and quantities of methamphetamine greater than 50 grams.

5. On July 18, 2019, CI#1 conducted several recorded phone calls with ILLESCAS in which ILLESCAS attempted to broker a deal between CI#1 and an associate of ILLESCAS, hereinafter referred to as source of supply (SOS), for one kilogram of methamphetamine. In the initial calls, ILLESCAS advised CI#1 of the SOS having one kilogram of methamphetamine for sell. In later calls, ILLESCAS referenced that he spoke with the SOS to confirm that the kilogram weighed 36 ounces and was from Mexico. Throughout the calls, CI#1 discussed with ILLESCAS that CI#1 wanted to purchase a small sample of the kilogram to determine whether they would purchase the entire one kilogram of methamphetamine. ILLESCAS told CI#1 that that SOS would sell two ounces of the methamphetamine for $400 per ounce or four ounces for $350 per ounce.

6. On July 19, 2019, CI#1 conducted several additional recorded phone calls with ILLESCAS. In the calls, CI#1 coordinated to purchase a two-ounce sample of the one kilogram of methamphetamine for $800. They coordinated to meet at the HEB in San Juan at approximately 11:00 AM.

7. On July 19, 2019 at approximately 11:10 AM, FBI agents observed ILLESCAS arrive at the HEB in a Nissan Sentra bearing Texas license plates LVB-2735. ILLESCAS was seen to exit the passenger side of the vehicle and enter CI#1's vehicle, while the driver of the Sentra remained in the vehicle. Upon entering CI#1's vehicle, CI#1 provided ILLESCAS $800 in exchange for two bags containing the methamphetamine. An audio/video recording device was utilized during the controlled purchase which captured the conversation between ILLESCAS and CI#1. In the conversation, ILLESCAS referenced the male driver that was in the Sentra several times:

**ILLESCAS**: "Yes. And there it is and there—honestly, brother, this guy gives me his word, but I trust you, there are about 20 kilos, brother, of that fucking thing.  Now there is. Now there is plenty to go around."

**CHS**: "There's that guy, the black guy, which I told you about last time."

**CHS**: " And this is for him. This—this stuff is for him."

**ILLESCAS:** "[OV] Yes, no, no man, there it is, brother. No, man, now we can, buddy. Not to brag, this guy only trusts me. There are 20 kilos right now. Honestly, there are 20 kilos. And I told the homeboy, right now, when you get there—I forgot to ask him for the scale.  Right now when you get there, brother, weigh it.  The homeboy already—already weighed it. And—and he said that it was—that it—that they were the same. There is stuff right now of that kind, brother, 20 kilos."

8. After the controlled purchase was finished, ILLESCAS returned to the passenger side of the Sentra and the vehicle departed. The vehicle was observed by FBI agents to travel to 508 Citrus Street, San Juan, Texas and arrived at approximately 11:18 AM. Shortly after, ILLESCAS called and told CI#1 that the SOS could sell the rest of the kilogram to the CI#1 with one day's notice.

9. Both bags obtained during the controlled purchase were submitted to the Drug Enforcement Agency (DEA) Laboratory. The analysis conducted by the DEA laboratory confirmed the substance was methamphetamine with a purity level of 98% pure plus or minus 6%. The combined net weight of methamphetamine in both bags was 58.9 grams.

10. Record checks conducted on the LVB-2735 license plates used by the Sentra showed the vehicle to be registered to a "Deanna Lee Arispe" at 506 Citrus St., San Juan, TX, 78589. Records checks

were conducted using the Hidalgo County Appraisal District database for "506 W Citrus Ave, San Juan" and it was determined to be owned by "GALLARDO BELINDA & RAUL I RODRIGUEZ".

11. On September 6, 2019, Investigators with the Alamo Police Department (PD) conducted a traffic stop on a black Cadillac CTS and the male driver was identified as Arturo ILLESCAS. During a pat down for officer safety, Alamo PD Investigators came across a plastic bag on the person of ILLESCAS which contained a green leafy substance which later field tested positive for marijuana and a clear plastic bag with a crystal-like substance that later field tested positive for methamphetamine. The methamphetamine was later weighed to be approximately 5.76 gram, the marijuana weighed approximately 0.8 grams, and the THC Oil weighed approximately 1.0 grams.

12. ILLESCAS was subsequently arrested by Alamo PD for the possession of the drugs and an inventory search of the black Cadillac CTS was conducted. Investigators located a Samsung Galaxy S7 Active cellphone, an LG Aristo 2 cellphone, and a THC vape cartridge in the center console of the black Cadillac CTS.

13. A federal search warrant was obtained for the Samsung Galaxy S7 Active cellphone. The IMEI associated with the phone matched the IMEI associated with tolls for 956-651-9946 (hereinafter Target Telephone #1). This correlation showed that Target Telephone #1 was used by ILLESCAS to arrange the controlled purchase with CI#1 and the SOS on that day. Your affiant reviewed the phone extraction for the Samsung Galaxy S7 Active and a contact was located on the phone for a "Gallo Carnal" with phone number 956-685-3662 (hereinafter Target Telephone #2).

14. A federal search warrant (M-19-2830-M-C) was obtained for call detail records with historical cell site information for phone numbers used by ILLESCAS to include Target Telephone #1. These records were reviewed for the dates of July 18 and July 19, 2019. Based on the timing and pattern of calls between ILLESCAS and CI#1 and when ILLESCAS would reference speaking with the SOS, it was determined

that the likely phone number used by the SOS was Target Telephone #2, the same number saved in ILLESCAS' phone under "Gallo Carnal."

15. A federal search warrant (M-19-2830-M-D) was obtained for call detail records and subscriber information for Target Telephone #2. The records returned showed that it was subscribed to a Diana Arispe at 508 Citrus Street, San Juan TX, 78589, the same address that the Nissan Sentra bearing TX plates LVB-2735, was observed traveling to after the controlled purchase. The call detail records obtained from the search warrant were reviewed and on July 19, 2019, two calls were made between Target Telephone #1 and Target Telephone #2 between 10:36 AM and 10:56 AM. For both calls, Target Telephone #2 used cell phone towers and sectors that were within the approximate area of the HEB in San Juan, TX and 508 W Citrus, San Juan.

16. On November 5, 2019, your affiant obtained a signed criminal complaint for ILLESCAS for violations of Title 21 USC 841(a)(1). ILLESCAS was subsequently indicted on November 19, 2019 and pled guilty to the charges on June 5, 2020.

17. FBI agents conducted several proffer interviews with ILLESCAS. In these proffers, ILLESCAS was shown a photograph of **GALLARDO**. ILLESCAS identified the male as "GALLO" and told FBI agents that the 5.76 grams of methamphetamine that was in his possession when he was arrested by Alamo Police Department belonged to **GALLARDO**. ILLESCAS also told FBI agents that **GALLARDO** was the SOS for the two ounces of methamphetamine that he sold to the CI#1 on July 19, 2019. ILLESCAS confirmed that **GALLARDO** drove ILLESCAS to the HEB in the Nissan Sentra and remained in the vehicle while ILLESCAS conducted the transaction. ILLESCAS told FBI agents that **GALLARDO** and his girlfriend lived at 508 W Citrus, San Juan, TX, and GALLO's mother lived at 506 W Citrus, San Juan, TX. ILLESCAS also admitted to using his cellphone to communicate with GALLARDO.

## Conclusion

18. As a result of the controlled purchase and other corroborating evidence, investigators have probable cause to believe that **GALLARDO** knowingly and willfully manufactured, distributed, or dispensed, or possessed with intent to manufacture, distribute or dispense, a controlled substance.

19. Based on the aforementioned factual information, your Affiant respectfully submits that **GALLARDO** did commit a violation of Title 21 United States Code Sections 846, 841(a)(1).

_____
Ryan Hammer
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 2nd day of June, 2021.

_____
Juan F. Alanis
United States Magistrate Judge